IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

ASSAN ALUMINYUM SANAYI VE TICARET A.S., *et al.*,,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*

and

ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS ARCONIC CORPORATION, COMMONWEALTH ROLLED PRODUCTS INC., CONSTELLIUM ROLLED RAVENSWOOD, LLC, JW ALUMINUM COMPANY, NOVELIS CORPORATION, and TEXARKANA ALUMINUM, INC

*Defendant- Intervenors*

Consol. Ct. No. 26-2957

**ORDER**

Upon consideration of the plaintiff's Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

**ORDERED** that the plaintiff's Rule 56.2 motion for judgment on the agency record is denied; and it is further

**ORDERED** that judgment shall issue for the United States.

Dated: ____________________ ______________________________
New York, New York JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

ASSAN ALUMINYUM SANAYI VE TICARET A.S., *et al.*,,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*

and

ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS ARCONIC CORPORATION, COMMONWEALTH ROLLED PRODUCTS INC., CONSTELLIUM ROLLED RAVENSWOOD, LLC, JW ALUMINUM COMPANY, NOVELIS CORPORATION, and TEXARKANA ALUMINUM, INC

*Defendant- Intervenors*

Consol.
Ct. No. 26-2957

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON AGENCY RECORD

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY

Director

NELSON KUAN
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice Civil Division
P.O. Box 480,
Washington, DC 20044
Tel.: (202) 307-0335
Nelson.Kuan@usdoj.gov

Of Counsel:
BRENDA BOTT
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

November 23, 2026

*Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

STATEMENT PURSUANT TO RULE 56.2 ........ 1

STATEMENT OF FACTS ........ 3

I. The Initial Review ........ 3

II. The Preliminary Results ........ 6

III. The Final Results ........ 8

SUMMARY OF THE ARGUMENT ........ 12

ARGUMENT ........ 13

I. Standard of Review ........ 13

II. Commerce's Determination That Law 7440 Is Not Part of the Same Tax Program as the RIIS Tax Reduction and the R&D Law Is Lawful And Supported By Substantial Evidence ........ 16

III. Commerce's Calculations Of The Benefits For The RIIS Tax Reduction And The R&D Law Did Not Exceed The Benefits That Assan Received ........ 20

A. Legal Framework ........ 20

B. Commerce properly calculated the benefit Assan received under the RIIS Tax Reduction and R&D Law ........ 21

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arnold P'ship v. Dudas*,
362 F.3d 1338 (Fed Cir. 2004) .......... 14

*Atl. Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984) .......... 15

*Cleo Inc. v. United States*,
501 F.3d 1291 (Fed. Cir. 2007) .......... 16

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966) .......... 14

*Edison Co. v. NLRB*,
305 U.S. 197 (1938) .......... 14

*Goldlink Indus. Co. v. United States*,
431 F.Supp.2d 1323 (Ct. Int'l Trade 2006) .......... 16

*INS v. Elias-Zacarias*,
502 U.S. 478 (1992) .......... 15

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 (Fed. Cir. 2006) .......... 15

*Shandong Rongxin Imp. & Exp. Co. v. United States*,
203 F.Supp.3d 1327 (Ct. Int'l Trade 2017) .......... 15

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005) .......... 14

*United States v. Eurodif S.A.*,
555 U.S. 305 (2009) .......... 14

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998) .......... 15

Statutes

5 U.S.C. § 706(2) .......... 14

19 U.S.C. § 1516a(b)(1)(B)(i) .......... 13

Regulations

19 C.F.R. § 351.503(e) .......... passim

19 C.F.R. § 351.509(a)(1) .......... 7, 11, 20, 23

Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List, 89 Fed. Reg. 22,390 (Dep't of Commerce April 1, 2024) .......... 3

*Certain Brake Drums From the Republic of Türkiye: Final Affirmative Countervailing Duty Determination*, 90 FR 26008 (June 18, 2025) .......... 19, 20

*Certain Brake Drums From the Republic of Türkiye: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Det*ermination, 89 FR 95740 (December 3, 2024) .......... 18

*Common Alloy Aluminum Sheet From the Republic of Türkiye: Final Results of Countervailing Duty Administrative Revie*w; 2023, 91 Fed. Reg. 17,941 (Dep't Commerce Apr. 9, 2026) .......... 1

*Common Alloy Aluminum Sheet From the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2023;* Correction, 91 Fed. Reg. 22,125 (Dep't Commerce Apr. 24, 2026) .......... 2

*Common Alloy Aluminum Sheet From the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2023;* Correction, 91 Fed. Reg. 23,961 (Dep't Commerce May 4, 2026) .......... 2

*Common Alloy Aluminum Sheet From the Republic of Türkiye:*

*Preliminary Results of the Countervailing Duty Administrative Rev*iew; 2023,
90 Fed. Reg. 38,453 (Dep't of Commerce August 8, 2025) ................. 6, 8

*Countervailing Duties:,*
*Final Rule*, 63 Fed. Reg. 65,348 (November 25, 1998) ............ 21, 24, 26

*Countervailing Duty Investigation of Certain Aluminum Foil From the People's Republic of China: Final Affirmative Dete*rmination,
83 FR 9274 (Dep't of Commerce February 18, 2018) ............... 10, 19, 21

*Countervailing Duty Investigation of Certain Polyethylene Terephthalate Resin From the People's Republic of China: Final Affirmative Dete*rmination,
81 FR 13337 (Dep't of Commerce March 14, 2026) ................. 10, 19, 21

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
89 Fed. Reg. 49,844 (Dep't of Commerce June 12, 2024) ....................... 3

Pursuant to Rule 56.2 of the Rules of United States Court of International Trade, defendant, the United States, respectfully submits this response in opposition to the motion for judgment on the agency record filed by Plaintiffs Assan Alüminyum Sanayi ve Ticaret A.Ş. (Assan), Kibar Dış Ticaret A.Ş. (Kibar Dış), and Kibar Americas Inc. (Kibar Americas) (collectively, Plaintiffs), challenging certain aspects of the U.S. Department of Commerce's (Commerce) final results of its 2003 administrative review of the countervailing duty order covering Common Alloy Aluminum Sheet from the Republic of Türkiye (Türkiye). As demonstrated below, Commerce's final results are supported by substantial evidence and are in accordance with law. As such, the United States respectfully requests the Court sustain Commerce's final results, deny the motion, and enter judgment in favor of the United States.

## <u>STATEMENT PURSUANT TO RULE 56.2</u>

### I. Administrative Determination Under Review

The administrative determination under review is *Common Alloy Aluminum Sheet From the Republic of Türkiye,* 91 Fed. Reg. 17,941

(Dep't of Commerce Apr. 9, 2026) (final admin. review) (P.R.10)[1] and the accompanying Issues and Decision Memorandum (IDM) (P.R.12), as corrected by *Common Alloy Aluminum Sheet From the Republic of Türkiye*, 91 Fed. Reg. 22,125 (Dep't of Commerce Apr. 24, 2026) (first correction final admin. review) (P.R.10), and *Common Alloy Aluminum Sheet From the Republic of Türkiye*, 91 Fed. Reg. 23,961 (Dep't of Commerce May 4, 2026) (second correction final admin. review) (P.R.3). The period of review is January 1, 2023 through December 31, 2023.

## II. Issues presented for Review

1. Whether Commerce's finding that Law 7440 is not part of the same program as the Regional Investment Incentive Scheme Corporate Tax Reduction (RIIS Tax Reduction) and the Law on Supporting Research, Development and Design Activities (R&D Law) is supported by substantial evidence.

2. Whether Commerce's benefit calculations for the RIIS Tax Reduction and the R&D Law overestimate the actual benefits that Assan received.

---

[1] "P.R." and "C.R." refer to documents in the public and confidential records, respectively.

3. Whether substantial evidence supports Commerce's finding that Law 7440 does not provide for an extraordinary expense.

## STATEMENT OF FACTS

### I. The Initial Review

On April 1, 2024, Commerce published a notice of opportunity to request an administrative review of the countervailing duty order covering Common Alloy Aluminum Sheet from The Republic of Türkiye. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 89 Fed. Reg. 22,390 (Dep't of Commerce Apr. 1, 2024).

On June 12, 2024, Commerce initiated the countervailing duty administrative review covering the period from January 1, 2023 through December 31, 2023. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 49,844 (Dep't of Commerce June 12, 2024) (P.R.284). On August 29, 2024, Commerce selected Assan and Teknik Aluminyum Sanayi A. S (Teknik) as the mandatory respondents in this review. *See* Memorandum, "Respondent Selection," August 29, 2024 (P.R.274).

On September 3, 2024, Commerce issued the countervailing duty

questionnaire to the Government of Türkiye (GOT) and instructed the GOT to forward the questionnaire to Assan and Teknik. *See* Commerce's Letter, "Countervailing Duty Questionnaire," September 3, 2024 (Initial Questionnaire) (P.R.273). Between September 2024 and November 2024, Commerce received timely responses to the questionnaire from the GOT, Assan, and Teknik. *See* Assan's Letter, "Questionnaire Response," September 24, 2024 P.R.269) (C.R.318-320); see also Teknik's Letter, "Affiliated Companies Response," September 17, 2024 (P.R.270); Assan's Letter, "Response to CVD Section III Questionnaire," October 28, 2024 (Assan's IQR) (P.R.253) (C.R.291-317); GOT's Letter, "Response to Initial Questionnaire in 2023 Countervailing Duty Administrative Review on Common Alloy Aluminum Sheet from the Republic of Turkey," November 8, 2024 (GOT's IQR) (P.R.210-252) (C.R.248-290).

Between April 2025 and July 2025, Commerce issued supplemental questionnaires to the GOT, Assan, and Teknik, and between May 2025 and July 2025, it received timely responses to the supplemental questionnaires from the GOT, Assan, and Teknik. *See* Assan's Letter, "Supplemental Questionnaire Response," May 12, 2025

(Assan's SQR) (P.R.157) (C.R.114-131); *also* GOT's Letter, "Response to Supplemental Questionnaire," May 12, 2025 (GOT's SQR) (P.R.158-175) (C.R.74-80); Teknik's Letter, "Supplemental Questionnaire Response," May 16, 2025 (Teknik's SQR) (P.R.147-150) (C.R.90-106); Assan's Letter, "2nd Supplemental Questionnaire Response," June 17, 2025 (Assan's 2SQR) (P.R.123); GOT's Letter, "First Part of the Second Supplemental Questionnaire," June 18, 2025 (GOT's 2SQR-1) (P.R.117-122); GOT's Letter, "Second Part of the Second Supplemental Questionnaire," June 20, 2025 (GOT's 2SQR-2) (P.R.113-115); Teknik's Letter, "Second Supplemental Questionnaire Response," June 18, 2025 (Teknik's 2SQR) (P.R.112) (C.R.65); GOT's Letter, "Response of the Government of Türkiye to the Third Supplemental Questionnaire," July 10, 2025 (GOT's 3SQR) (P.R.100); Assan's Letter, "3rd Supplemental Questionnaire Response," July 14, 2025 (Assan's 3SQR) (P.R.92); GOT's Letter, "Fourth Supplemental Questionnaire," July 16, 2025 (GOT's 4SQR) (P.R.86-87); GOT's Letter, Fifth Supplemental Questionnaire," July 18, 2025 (GOT's 5SQR) (P.R.81-82); GOT's Letter, "Sixth Supplemental Questionnaire," July 23, 2025 (GOT's 6SQR) (P.R.73-74); GOT's Letter, "Seventh Supplemental Questionnaire," July

23, 2025 (GOT's 7SQR) (P.R.65-72).

Relevant here, Assan reported that it had received the RIIS Tax Reduction, R&D Law tax deductions, and the Corporate Tax Reduction for Manufacturers (CTRM) during the period of review. *See* Response of Assan Alüminyum Sanayi ve Ticaret A.Ş. Questionnaire at 18-20, 56 (Oct. 28, 2024) (Assan's IQR) (P.R.253) (C.R.291-317).

## II. The Preliminary Results

On August 8, 2025, Commerce published its preliminary results. *See Common Alloy Aluminum Sheet From the Republic of Türkiye*, 90 Fed. Reg. 38,453 (Dep't of Commerce Aug. 8, 2025) (prelim. admin. review) (P.R.54), and the accompanying preliminary decision memorandum, (PDM), (P.R.55). Commerce made the following determinations in the preliminary results, as relevant to this litigation.

For the CTRM program, Commerce preliminarily determined that the tax reduction under paragraph 8 of Article 32 of Corporate Tax Law No. 5520 – which reduced the corporate tax rate applicable to Assan from 23 percent to 22 percent – constituted a financial contribution in the form of revenue forgone within the meaning of section 771(5)(D)(ii) of the Act. PDM at 21-22 (P.R.55). Commerce also preliminarily

determined that the benefit under this program was equal to the amount of the tax savings, pursuant to 19 C.F.R. § 351.509(a)(1), and preliminarily determined a countervailable subsidy rate of 0.14 percent *ad valorem* for Assan for the CTRM program. *Id.* at 22.

For the RIIS Tax Reduction and R&D Law, Commerce also preliminarily determined those programs had provided a financial contribution in the form of revenue forgone within the meaning of section 771(5)(D)(ii) of the Act, and a benefit in the amount of tax savings pursuant to section 771(5)(E) of the Act. *Id.* at 14-16. To calculate the benefit for these programs, Commerce compared the amount of tax that Assan had actually paid with the amount it would have paid in the absence of these programs. *Id.* In doing its calculations, Commerce used benefit calculations reported by Assan, which relied on the preferential 22 percent tax rate under paragraph 8 of Article 32 of Corporate Tax Law No. 5520, rather than the standard corporate tax rate of 23 percent. *See* Analysis and Calculations for the Preliminary Countervailing Duty Administrative Review: Assan Aluminyum Sanayi ve Ticaret A.S., (August 5, 2025) (Preliminary Calculations) (C.R.26-27); see also Assan's SQR at Exhibit S-01.c.

Assan also adjusted its reported benefit amounts for the RIIS Tax Reduction and R&D Law by deducting the additional corporate tax paid under Law 7440, and Commerce used the adjusted amounts to determine the program benefits for the preliminary results. *See* IDM at 24; *see also* Preliminary Calculations (C.R.26-27). On this basis, Commerce preliminarily determined a countervailable *ad valorem* subsidy rate of 1.69 percent for Assan for the RIIS Tax Reduction Program, and 0.01 percent and 0.02 percent for different components of the R&D Laws program. IDM at 15-16.

**III. The Final Results**

Between February 13 and February 25, 2026, Commerce received case and rebuttal briefs from the GOT, the petitioners, Assan, and Teknik. *See* GOT's Letter, "Case Brief," February 13, 2026 (GOT Case Brief) (P.R.21); Petitioners' Letter, "Petitioners' Case Brief," February 17, 2026 (Petitioner Case Brief) (P.R.18) (C.R.7); Assan's Letter, "Assan Group's Case Brief," February 17, 2026 (Assan Case Brief) (P.R.20); Teknik's Letter, "Teknik and Ekin's Case Brief," February 17, 2026 (Teknik Case Brief) (P.R.19) (C.R.8); Petitioners' Letter, "Petitioners' Rebuttal Brief," February 25, 2026 (Petitioner Rebuttal Brief) (P.R.14)

(C.R.5); Assan's Letter, "Assan Group's Rebuttal Brief," February 25, 2026 (Assan Rebuttal Brief) (P.R.15) (C.R.6).

In its case brief, petitioner argued that Commerce should modify its calculation methodology for the benefit that Assan received under the RIIS Tax Reduction and R&D Law programs by calculating Assan's tax savings based on the standard corporate tax rate of 23 percent and using the full amount of tax savings received by Assan, without adjusting for the additional tax imposed under Law 7440. *See* Petitioner Case Brief at 4-8 (P.R.18) (C.R.7). Assan argued that even if the Court were to uphold Commerce's treatment of Law 7440 as separate from the RIIS Tax Reduction and the R&D Program, Commerce still erred by failing to consider whether the increased tax obligations under Law 7440 qualify as an extraordinary expense that would reduce the tax benefits that Assan had received from the RIIS Tax Reduction and the R&D Law. *See* Plaintiff's Brief at 25-26.

On April 9, 2026 Commerce published the final results. *See* Final Results, and accompanying IDM, as amended by First Correction and Second Correction. In the final results, Commerce revised its methodology for calculating Assan's subsidy rate under the RIIS Tax

Reductions and R&D Law tax programs in two ways. IDM at 23-25. First, Commerce used the standard 23 percent corporate tax rate instead of the preferential 22 percent tax rate. *Id.* at 23-24. Commerce explained that it was its established practice not to include other tax incentives when determining the benefit of a separate countervailable tax program. *Id.* (citing *Countervailing Duty Investigation of Certain Aluminum Foil From the People's Republic of China*, 83 Fed. Reg. 9,274 (Dep't of Commerce Feb. 18, 2018) (final affirmative determin.), and accompanying IDM at Comment 21; *Countervailing Duty Investigation of Certain Polyethylene Terephthalate Resin From the People's Republic of China*, 81 Fed. Reg. 13,337 (Dep't of Commerce Mar. 14, 2026), and accompanying IDM at 40-41 and 43-44). In this review, Commerce determined that paragraph 8 of the CTRM, which states that the corporate tax rate is reduced by one percent to the earnings obtained from the production activities of the companies who hold an industrial registry certificate and are engaged in production activities, was a countervailable subsidy that had provided a benefit in the amount of the tax savings, pursuant to 19 C.F.R. § 351.509(a)(1). *See* PDM at 21-22 (unchanged in Final Results). Accordingly, because Commerce

determined CTRM was a separate countervailable program, Commerce used the standard corporate tax rate of 23 percent, rather than the 22 percent as provided under the CTRM, when calculating the benefits for RIIS Tax Reduction and the R&D Law. IDM at 23-24.

Second, Commerce revised its calculation methodology for the RIIS Tax Reductions and R&D Law tax programs by using the full tax savings that Assan had received under those programs, without adjusting for the additional tax under Law 7440, for which Assan had accounted in its calculations. *Id.* Commerce explained that record evidence demonstrates that Law 7440 is not part of the same tax program as the RIIS Tax Reduction or the R&D Law, and that its determination not to account for the additional tax under Law 7440 is consistent with 19 C.F.R. § 351.503(e), which provides that "the Secretary will not consider the tax consequences of the benefit" when calculating the amount of the benefit, and Commerce's established practice is not to include adjusted amounts that account for an additional tax. *See* 19 C.F.R. § 351.503(e); *see also* IDM at 24. Accordingly, Commerce determined that the issue of whether the separate, additional tax constituted an extraordinary expense was

inapplicable. *Id.* at 24-25.

As a result of these revised calculation methodologies, Assan's final subsidy rates for the RIIS Tax Reduction program and R&D Law tax deduction program was 3.64 percent, and 0.01 percent, respectively. *See* IDM at 4; *see also* Final Results at 17,942.

## SUMMARY OF THE ARGUMENT

Commerce reasonably determined that Law 7440 is not part of the same tax program as the RIIS Tax Reduction and the R&D Law. The 10 percent tax imposed under Law 7440 is a consequence of receiving benefits from these other programs, but it is not a part of those programs and is instead part of an entirely different law. Assan cites no evidence in the record or precedent holding that these separate tax programs and Law 7440 are all one program. Commerce's determination is supported by Assan's own tax returns and is consistent with Commerce's findings regarding Law 7440 in prior proceedings.

Furthermore, Commerce's calculations of the benefits for the RIIS Tax Reduction and the R&D Law appropriately used a revised methodology from the Preliminary Results to calculate Assan's benefit under the programs. Specifically, in the final results, Commerce

correctly used the standard corporate tax rate of 23 percent, instead of the preferential tax rate of 22 percent, because the one percent reduction provided under the CTRM is a separate countervailable subsidy program. Commerce also appropriately used the full tax savings that Assan had received under the RIIS Tax Reduction and R&D Law, instead of the adjusted amounts that account for an additional tax applied under Law 7440. This methodology is fully in accordance with 19 C.F.R. § 351.503(e). Accordingly, Commerce appropriately did not treat Law 7440 as an extraordinary expense.

Thus, Commerce's final determination is supported by substantial evidence and in accordance with law.

## ARGUMENT

### I. Standard of Review

This Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). Courts "hold unlawful and set aside agency action, findings, and conclusions found to be {} arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law{.}" 5 U.S.C. § 706(2). The Federal Circuit

has found that "{a}n abuse of discretion occurs where the decision is based on erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgement in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citing *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed Cir. 2004).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions does not make Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, a party challenging an agency determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (internal citation and quotation omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some

evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562-63 (Fed. Cir. 1984). Moreover, it is not necessary for Commerce to provide an explicit explanation so long as its decisional path is reasonably discernible. *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) (*Wheatland*).

Additionally, when Congress entrusts an agency to administer a statute that demands inherently fact-intensive inquiries, agency conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *see also Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F.Supp.3d 1327, 1338 (Ct. Int'l Trade 2017) (recognizing a deference to Commerce's factual findings). It is thus improper to overturn a determination "simply because the reviewing court would have reached a different conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted), and the Court will not substitute its judgment in choosing between two fairly conflicting views, even if it could "justifiably have made a different choice had the matter been before it

de novo." *Goldlink Indus. Co. v. United States*, 431 F.Supp.2d 1323, 1326 (Ct. Int'l Trade 2006) (internal citation and quotation omitted).

## II. Commerce's Determination That Law 7440 Is Not Part of the Same Tax Program as the RIIS Tax Reduction and the R&D Law Is Lawful And Supported By Substantial Evidence

Law 7440 imposes a 10 percent tax on benefits received under the RIIS Tax Reduction and/or the R&D Law programs, amongst other programs not relevant to this case. *See* Assan's IQR (C.R.314) at Exhibit 21. Commerce reasonably determined that Law 7440 is not part of the same tax program as the RIIS Tax Reduction and the R&D Law. Rather, the 10 percent tax is a consequence of having received benefits from these programs but is the result of a separate Law – Law 7440. *See* IDM at 24.

Information submitted by Assan on the record of this review demonstrates that the RIIS Tax Reduction, R&D Law, and Law 7440 are distinct and separate tax programs. First, Assan stated in its rebuttal brief that that Law 7440 explicitly refers to the RIIS deductions, which are provided for under a different law, and thus confirmed that the RIIS Tax Deduction and Law 7440 are separate. IDM at 24 (citing Assan Rebuttal Brief at 3). Moreover, Law 7440

states that "{i}n accordance with the Law No. 5520 and the regulations in other laws, the exemption and discount amounts subject to deduction from corporate income and the bases subject to reduced corporate tax within the scope of Article 32/A of the same Law, an additional tax at a rate of 10%...is calculated on the exempt earnings..." *See* Assan's IQR at Exhibit-21. Thus, Law 7440 explicitly states that tax liability pursuant to its terms is based on tax deductions available under other, separate programs, not that it is a part of those other programs.

Additionally, Assan's own tax returns demonstrate that the additional tax imposed under Law 7440 did not change the amounts claimed under the RIIS Tax Deduction or the R&D Law. IDM at 24. Specifically, Assan's claimed amounts for the RIIS Tax Reduction Program and the R&D Law did not take into account the 10 percent additional tax under Law 7440, because Assan separated the RIIS Tax reductions and R&D Law tax deductions program amounts from the taxes under Law 7440 in its corporate tax return. *See* Assan's IQR at Exhibits 19 and 20. In its tax return, Assan provided the amounts claimed for each program, but those amounts do not have the additional 10 percent tax incorporated in their totals. *Id.* Rather, the additional

tax levied pursuant to Law 7440 is separately listed as the additional tax paid because of these claimed amounts. *Id.* Additionally, the corporate tax base that was used to calculate the corporate tax amount relating to RIIS Tax Reduction was also listed without accounting for the additional 10 percent tax and listed separately in the FY 2022 tax return. *See* Assan's IQR at 19; *see also* Assan's IQR at Exhibit 22; Assan's Rebuttal Brief at 3. Thus, although Assan asserts that the three measures of the RIIS Tax Reduction, R&D Law, and Law 7440 function together, *See* Plaintiff's Brief at 3 and 15, Assan's own treatment of these measures as three separate and distinct programs in its tax returns supports Commerce's determination that Law 7440 is "a different law entirely."

Commerce's determination is also consistent with its previous findings with respect to Law 7440. *See Certain Brake Drums From the Republic of Türkiye*, 89 Fed. Reg. 95,740 (Dep't of Commerce Dec. 3, 2024) (prelim. affirmative CVD determin.), and accompanying PDM at 18, unchanged in *Certain Brake Drums From the Republic of Türkiye*, 90 Fed. Reg. 26,008 (Dep't of Commerce June 18, 2025), and accompanying IDM at 5 (collectively, *Brake Drums*). *See also* IDM at

23-24 (citing *Countervailing Duty Investigation of Certain Aluminum Foil From the People's Republic of China*, 83 Fed. Reg. 9,274 (Dep't of Commerce Feb. 18, 2018) (final affirmative CVD determin.), and accompanying IDM at Comment 21; *Countervailing Duty Investigation of Certain Polyethylene Terephthalate Resin From the People's Republic of China*, 81 Fed. Reg. 13,337 (Mar. 14, 2026) ) (final affirmative CVD determin.), and accompanying IDM at 40-41 and 43-44.). In *Brake Drums*, the GOT noted that under Law N. 7440, which came into effect during the January 1, 2023, through December 31, 2023 period of investigation, the mandatory respondent was required to pay a one-time additional tax that applied to all corporate tax payers that claimed deductions, exemptions, or reduced corporate tax in their 2022 corporate tax returns. In *Brake Drums*, Commerce determined that there was no indication on the record that Law 7440 was part of the RIIS Tax Reduction program but was rather a different law entirely. *See Brake Drums* PDM at 18; *see also Brake Drums* IDM at 5. Thus, in *Brake Drums*, as in this administrative review, Commerce did not take the tax imposed under Law 7440 into account when calculating the benefit for other programs. *Id.*; *see also* IDM at 24. Accordingly,

Commerce's determination that Law 7440 is not part of the same tax program as the RIIS Tax Reduction and the R&D Law is supported by record evidence and in accordance with law.

## III. Commerce's Calculations Of The Benefits For The RIIS Tax Reduction And The R&D Law Did Not Exceed The Benefits That Assan Received

### A. Legal Framework

When determining the benefit conferred under a tax progam, 19 C.F.R. § 351.509(a)(1) states that "a benefit exists to the extent that the tax paid by a firm as a result of the program is less than the tax the firm would have paid in the absence of the program." Under 19 C.F.R. § 351.503(e), in calculating the amount of a benefit, Commerce will not consider the tax consequences of the benefit. Moreover, "the impact of the benefit under one subsidy program should not be considered in calculating the benefit under a separate program." *See Countervailing Duties: Final Rule*, 63 Fed. Reg. 65,348, 65,362 (Dep't of Commerce Nov. 25, 1998) (Preamble). Accordingly, Commerce's established practice is not to include other tax incentives when determining the benefit for a separate countervailable tax program. See IDM at 23-24 (citing *Countervailing Duty Investigation of Certain Aluminum Foil From the People's Republic of China*, 83 Fed. Reg. 9,274 (Dep't of Commerce Feb.

18, 2018) (final affirmative CVD determin.), and accompanying IDM at Comment 21; *Countervailing Duty Investigation of Certain Polyethylene Terephthalate Resin From the People's Republic of China*, 81 Fed. Reg. 13,337 (Dep't of Commerce Mar. 14, 2026) (final affirmative CVD determin.), and accompanying IDM at 40-41 and 43-44).

### B. Commerce properly calculated the benefit Assan received under the RIIS Tax Reduction and R&D Law

Assan argues that Commerce calculated benefits for the RIIS Tax Reduction and the R&D Law that exceeded the benefits that Assan received. *See* Plaintiff's Brief at 16 and 23. Contrary to these arguments, Commerce reasonably revised its methodology from the Preliminary Results for calculating Assan's subsidy rate under RIIS Tax Reductions and R&D Law tax deductions for R&D expenses. Commerce's calculation of the benefits for the RIIS Tax Reduction and the R&D Law in the Final Results is supported by substantial evidence and is in accordance with law.

First, in the Final Results, Commerce correctly used the standard corporate tax rate of 23 percent instead of the preferential tax rate of 22 percent in determining the benefit Assan received under the RIIS Tax Reduction and R&D Law. In this review, Commerce countervailed the

CTRM program, pursuant to which, under paragraph 8, the corporate tax rate of program recipients is reduced by one percent for the earnings obtained from the production activities of the companies who hold an industrial registry certificate and are engaged in production activities. *See* PDM at 21-22. Assan reported receiving benefits under paragraph 8, which reduced Assan's corporate tax rate by one percent so that it received a preferential tax rate of 22 percent rather than the standard corporate tax rate of 23 percent under the CTRM program. IDM at 23-24. Accordingly, Commerce calculated a benefit for Assan under the CTRM program, equal to the amount of the tax savings, pursuant to 19 C.F.R. § 351.509(a)(1). PDM at 22, unchanged in Final Results.

In calculating the benefit under the separate RIIS Tax Reduction and R&D Law programs, Commerce preliminarily applied the 22 percent preferential tax rate Assan received under the CTRM program in calculating the benefit Assan received under the RIIS Corporate Tax and R&D Law. IDM at 23-24. However, in the Final Results, Commerce determined that this was not the appropriate tax rate to use, because "it is Commerce's established practice not to include other tax

incentives when determining the benefit from a separate countervailable tax program." *Id.* Thus, because the CTRM was a separate countervailable program from the RIIS Tax Reduction and R&D Law, Commerce properly used the standard corporate tax rate of 23 percent when calculating the benefits for RIIS Tax Reduction and the R&D Law. *Id.*

Assan argues that Commerce assumed that a higher corporate tax rate (23 percent) would have applied to Assan's corporate tax earnings in the absence of the RIIS Tax Reduction and the R&D Law, and Assan argues that in the absence of the RIIS Tax Reduction and the R&D Law, a corporate tax rate of 22 percent would have applied to Assan's earnings. *Id.* Assan misunderstands Commerce's methodology. Commerce's established practice is that "the impact of the benefit under one subsidy program should not be considered in calculating the benefit under a separate program." *See Countervailing Duties: Final Rule*, 63 Fed. Reg. 65,348, 65,362 (Dep't of Commerce Nov. 25, 1998) (*Preamble*). Because Commerce reasonably determined that the CTRM was a separate countervailable subsidy program, Commerce properly used the standard corporate tax rate when calculating the benefits for RIIS Tax

Reduction and the R&D Law. Accordingly, for the Final Results, Commerce appropriately revised its methodology for calculating Assan's subsidy rate under RIIS Tax Reductions and R&D Law tax deductions for R&D expenses by using the standard corporate tax rate of 23 percent instead of the preferential tax rate of 22 percent. *See* IDM at 23-24.

Assan further claims that under Commerce's calculation methodology, it was unable to receive the full amount of the deductions under the RIIS Tax Reductions and R&D Law due to Law 7440, which was adopted in response to strong earthquakes that occurred in February 2023 and imposed an additional tax of 10 percent upon taxpayers that received R&D Law tax deductions and RIIS tax reductions through investment incentive certificates. *Id.* at 23; *see also* Assan IQR at 18-20. As an initial matter, Assan's corporate tax return indicates that it did indeed claim the full amount of the tax deduction under each program. *See* Assan's IQR at Exhibits 9 and 17. Specifically, Assan's claimed amounts for the RIIS Tax Reduction program and the R&D Law did not take into account the 10 percent additional tax under Law 7440. However, Assan asserts that the

additional tax it was required to pay as a result of Law 7440 reduced the amount of the tax benefit it received under the RIIS Tax Reductions and R&D Law. Assan asserts that Commerce should account for this by deducting the additional corporate tax paid under Law 7440 from the corporate tax deduction amounts under the RIIS Tax Reductions and R&D Law. However, such a methodology is not supported by Commerce's practice, regulations, or the record.

As explained above, Law 7440, RIIS Tax Reductions, and the R&D Law are three separate programs, rather than parts of a single program. Accordingly, in calculating Assan's benefits for the RIIS Tax Reduction and the R&D Law, Commerce properly used the full tax savings that Assan received instead of the adjusted amounts Assan reported that accounted for the additional tax imposed pursuant to Law 7440. *Id.* at 24-25. This was consistent with 19 C.F.R. § 351.503(e) and Commerce's established practice not to consider the tax consequences of a benefit when calculating the amount of the benefit. *See* 19 C.F.R. § 351.503(e); *see also* IDM at 24.

Assan argues that Law 7440 does not impose increased tax liability as a mere "consequence" of RIIS Tax Reduction and the R&D

Law, but rather argues, without support, that Law 7440 is an integral and inseparable aspect of these tax measures. Plaintiff's Brief at 15 and 17. However, Assan confirms that this additional tax is a result of the benefit received under the RIIS Tax Reduction and R&D Law discount. *Id.* Therefore, the consequence of the tax reduction under RIIS Tax Reduction and R&D Law tax deductions was the payment of an additional 10 percent tax.

Commerce's regulation, 19 C.F.R. § 351.503(e), which has the force of law, provides that Commerce will not consider the tax consequences of the benefit when calculating the amount of the benefit. *See* 19 C.F.R. § 351.503(e). Moreover, "the impact of the benefit under one subsidy program should not be considered in calculating the benefit under a separate program." *See Countervailing Duties: Final Rule*, 63 Fed. Reg. 65,348, 65,362 (Dep't of Commerce Nov. 25, 1998) (*Preamble*). Nowhere does Assan explain how and why it believes that Commerce was free to violate the plain language of 19 C.F.R. § 351.503(e) in calculating the amount of Assan's benefit in the final results.

In short, Commerce's methodology in calculating the benefits for the RIIS Tax Reduction and the R&D Law is consistent with 19 C.F.R. §

351.503(e) and Commerce's established practice, and Commerce reasonably revised its methodology from the Preliminary Results. *See* Memorandum, "Final Analysis Calculations for Assan Aluminyum Sanayi ve Ticaret A.S.," dated April 6, 2026 (Assan's Final Analysis Memorandum) (P.R.9) (C.R.3-4).

Finally, Assan argues that because Law 7440 was adopted due to earthquakes, Commerce should treat this adjustment as an extraordinary expense. *See* Plaintiff's Brief at 26. As Assan acknowledges, extraordinary expenses typically relate to calculations in antidumping duty proceedings. Plaintiff's Brief at 25-26. The cases on which Assan relies to support its contention that Commerce should have treated the tax imposed by Law 7440 as an extraordinary expense are exclusively *antidumping duty* cases involving Commerce's calculation of cost of production in determining normal value under 19 U.S.C. §1677b(f)(1)(A) – *i.e.,* part of the Act relating to the calculation of antidumping duties. *Id.* (citing *Sugar From Mexico*, 80 Fed. Reg. 57,341 (Dep't of Commerce Sept. 23, 2015) (final LTFV determin.), and accompanying IDM at 13–14; *Granular Polytetrafluoroethylene Resin From India*, 87 Fed. Reg. 3,772 (Dep't of Commerce Jan. 25, 2022) (final

LTFV determin.), and accompanying IDM at 20). Assan makes no attempt to explain why Commerce should apply that methodology to this *countervailing duty* proceeding. Moreover, as explained above, Law 7440 and Assan's submissions in this administrative review support that this is not part of the RIIS Tax Reduction or R&D Law programs, but rather a different law entirely. *See* Assan's IQR at Exhibits 19, 20, and 21; *see also* Assan Rebuttal Brief at 3-5. Accordingly, Commerce appropriately determined that the question of whether the taxes imposed under Law 7440 is an extraordinary expense is inapplicable. IDM at 23-24.

Therefore, Commerce's calculation of Assan's benefits under the RIIS Tax Reduction and R&D was based on substantial evidence and in accordance with law.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny the plaintiffs' motion, sustain Commerce's Final Results and enter judgment for the United States.

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

Of Counsel:
BRENDA BOTT
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

NELSON KUAN
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice Civil
Division
P.O. Box 480,
Washington, DC 20044
Tel.: (202) 307-0335
Nelson.Kuan@usdoj.gov

November 23, 2026

*Attorneys for Defendant*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the attached Defendant's Response to Plaintiff's Motion for Judgment on the Agency Record, contains 5,281 words, including headings, footnotes, and quotations, and excluding the cover page, table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare this brief, and therefore complies with the maximum 14,000 word count limitation set forth in the Scheduling Order issued by the Court on August 21, 2026, ECF 27.

*/s/ Nelson Kuan*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 23, 2026, I caused a copy of the foregoing brief to be served, via CM/ECF and electronic file transfer, on all counsel of record.

*/s/ Nelson Kuan*